UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL J. HAUST,

Plaintiff,

-v- 5:11-CV-153

UNITED STATES OF AMERICA,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES: OF COUNSEL:

HANCOCK & ESTABROOK, LLP — TIMOTHY P. MURPHY, ESQ.
Attorneys for Plaintiff
100 Madison Street
Suite 1500
Syracuse, NY 13202

HON. RICHARD S. HARTUNIAN — PAULA RYAN CONAN, ESQ.
United States Attorney — Asst. United States Attorney
Northern District of New York
Attorney for Defendant
100 South Clinton Street
P.O. Box 7198
Syracuse, NY 13261

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION and ORDER**

## I. INTRODUCTION

Plaintiff Daniel J. Haust ("plaintiff" or "Haust") brings this action against the United States of America ("defendant" or "the government") under the Federal Torts Claims Act ("the FTCA"), 28 U.S.C. §§ 1346(b)(1), 2401(b), 2671–2680. This action arises from a motor

vehicle accident on December 22, 2008, on State Route 264 ("Route 264") in the Town of Schroeppel, New York, where plaintiff's 2005 Chevrolet Silverado pick-up truck ("the truck") collided with a Postal Service vehicle ("the Postal vehicle" or "the Postal Service LLV"), owned by the United States Postal Service ("USPS") and operated by USPS employee Angel Warner ("Warner"). Plaintiff seeks compensatory damages for injuries sustained from the accident.

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes, and defendant has replied. The motion was considered on submit with no oral argument.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed and presented in the light most favorable to the non-movant. See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

The accident underlying this action occurred at approximately 10:45 a.m. on December 22, 2008, on Route 264. Due to the blizzard-like weather conditions, roadway visibility was poor that morning. The roads were covered in hard-packed snow, and there were heavy winds and periodic whiteouts.

Warner, then age thirty-one, worked as a rural mail carrier out of the USPS office in Phoenix, New York. Since September 2006, her position involved delivering mail to USPS rural customers in the Postal vehicle, a 1989 GMC utility truck, along a route which included Mailbox No. 262 on Route 264. After delivering mail to Mailbox No. 262, the eastern-most mailbox on her route, Warner was required to perform a "turnaround," where she would cross over Route 264 and then continue on Route 264 in the westbound lane towards Phoenix.

Warner was trained to do this turnaround by driving past No. 262's driveway and mailbox, putting the Postal Service LLV into reverse, sounding her horn, backing into No. 262's driveway, and then turning left into the westbound lane of Route 264. Mailbox No. 255 was the first mailbox on her delivery route in the westbound lane on Route 264 after she completed the turnaround. She followed this route on the morning of the accident giving rise to this case.

On this same morning, Haust, then age fifty-nine, had left his home in West Monroe, New York, to drive to work in East Syracuse, New York. In the short time before the accident, he was driving the truck westbound on Route 264, towards Phoenix. At approximately 10:45 a.m., after he was past the point where Route 264 crosses over Route 481, Haust first saw the Postal vehicle. Plaintiff testified that the Postal vehicle was moving, and the front of the vehicle was already in his lane of travel—the westbound lane of Route 264. He elaborated that he "wasn't going very fast" and that "it was just all of a sudden, and she was there." Murphy Decl., Ex. 4, ECF No. 21-4, 76:23–24, 77:24–25 ("Haust Dep. Tr."). Although he had little time to react, he tried to turn to the right and move his foot off the gas in order to avoid hitting the Postal vehicle. Haust testified that the truck's front left bumper hit the right side, and not the rear-end, of the Postal vehicle.

At her deposition, Warner estimated that she did not travel more than fifteen miles per hour while making her turnaround that morning. She testified that, before turning left out of the driveway at No. 262, she looked both left and right and did not observe any other traffic. She further testified that the Postal vehicle's headlights and orange flasher lights were operative that day and were on at all times.

After turning left out of the driveway of No. 262, Warner claims that she drove in the

westbound lane of Route 264 and pulled to the right-most side of the road to deliver mail to No. 255. She testified that she stopped the Postal vehicle next to Mailbox No. 255, just off the roadway, with the right side of her vehicle to the right of the white shoulder line. According to Warner, she then gathered the mail for delivery to No. 255 and started to reach out of the Postal vehicle's window to place the mail into the mailbox when her vehicle was struck from behind by Haust's vehicle.

The impact from the collision turned the Postal vehicle so that it was facing north, approximately perpendicular to the westbound lane of Route 264. Haust's vehicle went off the right side of the westbound lane of Route 264 and came to rest in a snow-filled ditch in front of both the Postal vehicle and the house located at No. 255. After the impact, Warner secured her vehicle and went up to the house at No. 255 to call the police and her postmaster. Plaintiff suffered multiple injuries as a result of the accident. After being initially treated at North Medical Center Urgent Care, he eventually came under the care of Stephen Robinson, M.D. of Syracuse Orthopedic Specialists and was surgically treated on July 29, 2009, for injuries sustained in the accident.

Following the accident, USPS completed an accident investigation worksheet, which indicated that the Postal vehicle's right rear fender was "dented" and "scraped." Murphy Decl., Ex. 7, ECF No. 21-7, 2 ("Accident Investigation Worksheet"). Investigating officers also completed a police accident report, which designated the accident as a "sideswipe." Murphy Decl., Ex. 8, ECF No. 21-8, 1 ("Police Report"). Specifically, the report indicated: "OP-2 [Haust] unable to avoid V-1 [Warner] and sideswipes same." Id.

Defendant has retained Eugene Camerota ("Camerota"), Professional Engineer, as an expert witness in accident reconstruction. Plaintiff did not take Camerota's deposition during

discovery, and has not retained an expert witness in accident reconstruction. It is Camerota's professional opinion that this accident occurred while the Postal vehicle was next to No. 255, approximately parallel to and off the right side of Route 264, out of the westbound travel lane. It is also his professional opinion that plaintiff's vehicle was traveling at an unsafe speed for the prevailing conditions. In reaching his opinion, Camerota relies heavily on the post-accident photographs that were taken at the scene by a neighbor, the damages estimates and reports of the damage done to the Postal Service LLV and the truck, the photographs of the damage done to the Postal Service LLV, and the configuration of the area and roadways in the accident vicinity.

He opines that, had the accident occurred as Haust believes, i.e. while the Postal vehicle was performing a turnaround, moving across Route 264 and approximately perpendicular to the westbound travel lane, the final rest positions and primary damage points of the vehicles would have been very different from what they actually were. Specifically, Camerota notes that if the truck had struck the Postal Service LLV while performing its turnaround, the primary damage to the Postal Service LLV would have been to its right side and right front end, and both the vehicles would have come to rest at least 125 feet east of where they actually did come to rest.

## III. DISCUSSION

Defendant argues that it is entitled to summary judgment because: (1) Haust cannot meet his burden of proof as Warner's conduct did not meet the "reckless disregard" standard of care required by New York law; (2) Haust was presumptively negligent; and (3) Haust's reliance on his own self-serving testimony cannot defeat a motion for summary judgment. Plaintiff argues that summary judgment is inappropriate here because of the triable issues of

fact regarding Warner's operation of the Postal vehicle, the location of the Postal vehicle immediately before the accident, and the nature of the collision.

**A. Motion for Summary Judgment—Legal Standard**

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986); Richardson v. N.Y. State Dep't of Corr. Servs., 180 F.3d 426, 436 (2d Cir. 1999); Lang v. Ret. Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323,106 S. Ct. 2548, 2552 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the non-movant. Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356; Richardson, 180 F.3d at 436; Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983).

When the moving party has met its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 250, 106 S. Ct. at 2511 (internal quotation marks omitted). To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable fact-finder could return a verdict for the non-movant. Id. at 248–49, 106 S. Ct. at 2510; Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.

### B. Applicable Substantive Law

The government contends that, even accepting plaintiff's version of the events, Haust cannot meet his burden of proof because Warner's conduct did not meet the "reckless disregard" standard of care required by New York law. Def.'s Mem. Supp. Summ. J. 3 ("Def.'s Mem."). Plaintiff maintains that the proper applicable standard of care is ordinary negligence.

Actions sued under the FTCA are to be decided "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).[1] The application of § 1346(b)(1) is that "[t]he liability of the federal government under the FTCA is generally determined by state law." Taylor v. United States, 121 F.3d 86, 89 (2d Cir. 1997) (internal quotation marks omitted). Because the alleged negligence in this case occurred in New York, the substantive law of New York applies.[2]

New York Vehicle and Traffic Law ("VTL") section 1103(b) creates certain exceptions from the ordinary rules of the road for "public vehicles" engaged in work on a highway, including statutorily defined "hazard vehicles." Riley v. Cnty. of Broome, 95 N.Y.2d 455, 461 (2000). "[T]he exemption turns on the nature of the work being performed . . . not on the nature of the vehicle performing the work." Id. at 464. Furthermore, the VTL defines "hazard vehicles" as including "vehicles driven by rural letter carriers while in the performance of their

---

[1] Because Haust has brought suit under the FTCA, 28 U.S.C. §§ 1346(b)(1), 2401(b), 2671–2680, this action will be tried without a jury. 28 U.S.C. § 2402; Liranzo v. United States, 690 F.3d 78, 83 n.5 (2d Cir. 2012).

[2] It is uncontested that Warner was acting in the course of her employment as a postal carrier for USPS at the time of the accident. Moreover, plaintiff commenced this action after USPS failed to make a final disposition of the claim within six months after he filed an administrative claim, pursuant to 28 U.S.C. § 2675(a). Accordingly, the FTCA holds the government liable if Warner is found negligent in this action.

official duties." N.Y. Veh. & Traf. Law § 117-a.

In Riley, the New York Court of Appeals interpreted VTL section 1103(b) to require a showing of "reckless disregard" in order to establish liability on the part of a driver of a hazard vehicle engaged in covered work. 95 N.Y.2d at 466. Specifically, the plaintiff must demonstrate that the driver "has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow and has done so with conscious indifference to the outcome." Id. (internal quotation marks omitted). The government concedes that New York case law has yet to apply the "reckless disregard" standard of care to "vehicles driven by rural letter carriers while in the performance of their official duties." Def.'s Mem. 8–9. Nonetheless, Warner's conduct falls within the meaning of VTL section 1103(b), as she was clearly engaged in the performance of her official duties as a rural letter carrier at the time of the accident. A reckless disregard standard of care thus applies here. See Riley, 95 N.Y.2d at 468.[3]

Although this more demanding standard of care applies, a question of fact remains as to whether or not Warner's conduct rose to the "reckless disregard" standard. In Ryan v. Town of Smithtown, the driver of the defendant's dump truck testified that the "truck was equipped with backup lights and beeping device that would sound when [the] truck was driven in reverse, both of which were operational" at the time of the accident with plaintiff's

---

[3] Haust argues that the government waived its "reckless disregard" defense because it "was not pled as an affirmative defense in Defendant's answer nor articulated in response to Plaintiff's Interrogatories." Pl.'s Mem. Opp'n Summ. J. 10 ("Pl.'s Mem."). The government correctly asserts, however, that VTL section 1103(b) is not an affirmative defense, but a statutory standard of care. Thus, defendant was not required to plead VTL section 1103(b) as an affirmative defense. See Yousel v. Verizon Inc., 33 A.D.3d 315, 315 (N.Y. App. Div. 1st Dep't 2006); Wilson v. State, 269 A.D.2d 854, 855 (N.Y. App. Div. 4th Dep't 2000), aff'd, Riley, 95 N.Y.2d 455.

vehicle. 49 A.D.3d 853, 854 (N.Y. App. Div. 2d Dep't 2000). The plaintiff, however, testified that she did not observe any illuminated reverse lights or hear any warning sounds as the truck backed up prior to the collision. Id. Even though the defendant's conduct was covered under VTL section 1103(b), the court concluded that the plaintiff's testimony "raised a triable issue of fact as to whether [the driver] operated the truck with reckless disregard for the safety of others" and affirmed the lower court's denial of the defendant's motion for summary judgment. Id.

Here, the government has similarly failed to produce "sufficient evidence to demonstrate the absence of any material issues of fact." Bicchetti v. Cnty. of Nassau, 49 A.D.3d 788, 788 (N.Y. App. Div. 2d Dep't 2008) (internal quotation marks omitted) (affirming the denial of summary judgment when the record presented triable issues of fact as to reckless conduct of defendant's employee in the course of snow plowing). This case presents disputed issues of fact, specifically: (1) whether Warner took proper precautions while operating the Postal vehicle; (2) the location of the Postal vehicle on Route 264 immediately before the accident; and (3) whether the truck collided with the rear-end or the right side of the Postal vehicle. Indeed, viewing the evidence in the light most favorable to plaintiff, "a rational [trier of fact] could conclude that [defendant] acted with reckless disregard for the safety of others." Gordon v. Cnty. of Nassau, 261 A.D.2d 359, 359 (N.Y. App. Div. 2d Dep't 1999).

**C. Rear-End Collision Establishing a Presumption of Negligence**

The government also argues that, under New York law, a rear-end collision with a stopped vehicle is prima facie evidence of negligence on the part of the driver of the rearmost vehicle. Because, according to defendant, the Postal vehicle had come to a stop at

the time of the accident and the truck rear-ended the Postal vehicle, the government contends that Haust was presumptively negligent. The government concludes that Haust has failed to rebut this presumption of negligence, and it is therefore entitled to judgment as a matter of law.

Defendant is indeed correct that, under New York law, any driver approaching another car from the rear must "exercise reasonable care to avoid colliding with the other vehicle." Krynski v. Chase, 707 F. Supp. 2d 318, 323 (E.D.N.Y. 2009) (internal quotation marks omitted); see also N.Y. Veh. & Traf. Law § 1129(a) ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."). If this case did not present any factual questions as to the nature of the accident, and the undisputed evidence showed that the accident was a typical rear-end collision, then summary judgment in favor of defendant would be appropriate. See Rodriguez v. City of New York, 259 A.D.2d 280, 280 (N.Y. App. Div. 1st Dep't 1999) (affirming lower court's grant of summary judgment in favor of defendant where the undisputed evidence showed that plaintiff's failure to maintain a safe driving speed and distance was the proximate cause of a rear-end collision with a stopped vehicle).

This case, however, presents triable issues of fact as to the nature and location of the collision. Although Warner's testimony and Camerota's report suggest that the accident was a straightforward rear-end collision with a stopped vehicle, Haust testified that Warner turned in front of him and into his lane of travel, the accident investigation worksheet indicated that the "right rear fender was dented and scraped," Accident Investigation Worksheet 2, and the police report concluded that the accident was a "sideswipe." Police Report 1. Thus, a

genuine issue of material fact remains as to whether the accident was a sideswipe or a rear-end collision, and summary judgment in favor of defendant is inappropriate. See Jones v. Egan, 252 A.D.2d 909, 912 (N.Y. App. Div. 3d Dep't 1998) (reversing lower court's grant of summary judgment because the location of defendant's parked delivery truck with respect to the driving lane was disputed); Cammilleri v. S & W Realty Assocs., 243 A.D.2d 530, 531 (N.Y. App. Div. 2d Dep't 1997) (holding that, even though the driver of the moving vehicle in a rear-end collision with a stopped vehicle is presumptively negligent, summary judgment is inappropriate when questions of fact exist).

**D. Plaintiff's Reliance on His Own Self-Serving Testimony**

The government further contends that Haust relies primarily on his own deposition testimony, which contradicts defendant's purportedly objective evidence, i.e. Warner's testimony and Camerota's report. The government concludes that no reasonable trier of fact could find in plaintiff's favor and summary judgment is therefore appropriate.

It is well understood that a district court generally "should not weigh evidence or assess the credibility of witnesses" when deciding a motion for summary judgment. Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). Indeed, weighing evidence and assessing the credibility of witnesses fall exclusively within the province of the fact-finder. See McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006).

The Second Circuit has recognized that, "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine . . . whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quoting Liberty Lobby, 477

U.S. at 252, 106 S. Ct. at 2512). In order for a district court to discredit a plaintiff's self-serving testimony, the testimony must be "so replete with inconsistencies and improbabilities that no reasonable [fact-finder] would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." Id. at 555 (internal quotation marks omitted). The Second Circuit has subsequently clarified that a court's assessment of witness credibility should be confined to "certain extraordinary cases, where the facts alleged are so contradictory that doubt is cast upon their plausibility." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2d Cir. 2011) (internal quotation marks omitted), cert. denied, 132 S. Ct. 1744 (2012); see also Matheson v. Kitchen, No. 12-2483, 2013 WL 1150517, at *2 (2d Cir. 2013) (summary order) (noting that the facts in Jeffreys were "extreme").

Defendant argues that the case at hand presents circumstances similar to Jeffreys and Rojas, with the evidence unequivocally showing that "Haust's perception of what occurred was simply flawed." Def.'s Mem. 22. Given that the facts of this case, however, exhibit minimal, if any, resemblance to Jeffreys and Rojas, such a comparison is misplaced. In Jeffreys, the plaintiff concocted a radically different version of events that directly contradicted the story he had consistently given to medical, police, and risk screening personnel before the onset of litigation. 426 F.3d at 552. Considering that nothing in the record supported plaintiff's allegations "other than plaintiff's own contradictory and incomplete testimony," the Second Circuit concluded that "[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the] complaint" and affirmed the district court's grant of summary judgment. Id. at 555 (internal quotation marks omitted).

Similarly, in Rojas, the plaintiff, who claimed violations of Title VII, proffered facts in

her opposition to the defendants' motion for summary judgment that directly contradicted the facts alleged in her original and amended complaints, sworn interrogatory responses, portions of her deposition testimony, her complaint filed with the Equal Employment Opportunity Commission, and her prior sworn testimony in a related criminal proceeding. 660 F.3d at 105. Specifically, the plaintiff suddenly described a defendant as her "supervisor" after previously alluding to him as a "co-worker" and claimed that she had filed a sexual harassment complaint in the district court, when in fact she had not. Id. The Second Circuit reasoned that such blatantly incredulous testimony "transcend[ed] credibility concerns" and "was not of such a character that it would warrant the [trier of fact] in finding a verdict in favor of that party." Id. at 106 (internal quotation marks omitted).

Here, Haust has simply presented a different factual account of the accident than defendant. Nowhere during the course of this action has his account of the events changed even slightly. Indeed, even if he were to present "minor inconsistencies," his deposition testimony and the allegations in the complaint "cannot fairly be characterized as fundamentally inconsistent or incoherent." Matheson, 2013 WL 1150517, at *2. Since the onset of litigation, Haust has consistently claimed that Warner did not take proper safety precautions in the adverse weather conditions, failed to yield the right-of-way, and turned in front of him and into his lane of travel. Compl. ¶ 16; Haust Dep. Tr. 76:13–77:25, 108:1–12; Pl.'s Mem. 1–2. He has at least presented a "conflicting version[] of the events," which is a matter "for the [fact-finder], not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996). Moreover, in addition to his own testimony, Haust has also proffered the accident investigation worksheet and the police report, both of which support his contention that the accident was a sideswipe.

Accordingly, genuine issues of material fact remain, specifically: (1) whether Warner took proper precautions while operating the Postal vehicle; (2) the location of the Postal vehicle on Route 264 immediately before the accident; and (3) whether the accident was a rear-end collision or a sideswipe with the right side of the Postal vehicle. Defendant therefore cannot circumvent well-settled New York law that summary judgment is inappropriate where there are conflicting versions of the events provided by the drivers that raise questions of fact. Bixler v. Buckeye Pipe Line Co., 309 A.D.2d 1285, 1286–87 (N.Y. App. Div. 4th Dep't 2003) (upholding denial of summary judgment due to conflicting deposition testimony recounting a vehicle collision); Quiles v. Greene, 291 A.D.2d 345, 346 (N.Y. App. Div. 1st Dep't 2002) (conflicting accounts of drivers raise triable issues of fact); Karram v. Cirillo, 281 A.D.2d 946, 946 (N.Y. App. Div. 4th Dep't 2001) (affirming denial of summary judgment when defendant's submissions raised issues of material fact as to "whether he activated his turn signal and whether he came to an abrupt stop without warning prior to the accident").

## IV. CONCLUSION

The evidence in the record indicates that genuine issues of material fact remain for trial. Even holding Warner's conduct to the "reckless disregard" standard of care under VTL section 1103(b), triable issues of fact remain as to her operation of the Postal vehicle, the location of the Postal vehicle immediately before the accident, and the nature of the collision. Summary judgment is therefore inappropriate.

Accordingly, it is

ORDERED that

1. Defendant's motion for summary judgment is DENIED;

2. The bench trial will commence on September 23, 2013, at 9:30 a.m. in Utica, New York. Pretrial submissions, including exhibit and witness lists, trial briefs, and a stipulation of material facts not in dispute, shall be filed on or before September 6, 2013, at noon.

IT IS SO ORDERED.

United States District Judge

Dated: July 17, 2013
Utica, New York

The parties are referred to Hon. Therese Wiley Dancks, United States Magistrate Judge, for settlement discussions, if any.