UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL J. HAUST,

                Plaintiff,

  -v-                                                5:11-CV-153

UNITED STATES OF AMERICA,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

HANCOCK & ESTABROOK, LLP          TIMOTHY P. MURPHY, ESQ.
Attorneys for Plaintiff
100 Madison Street
Suite 1500
Syracuse, NY 13202

HON. RICHARD S. HARTUNIAN         KAREN FOLSTER LESPERANCE, ESQ.
United States Attorney for the            Ass't United States Attorney
Northern District of New York
Attorneys for Defendant
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     This action arises from a motor vehicle accident that occurred during a snowstorm on December 22, 2008, in the Town of Schroeppel, New York. Plaintiff Daniel J. Haust ("plaintiff" or "Haust"), driving his personal vehicle, collided with a United States Postal

Service ("USPS") vehicle, operated by USPS employee Angel Warner ("Warner"). On February 9, 2011, plaintiff initiated this action, in which he brings one claim against the United States of America ("defendant" or "the government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2401(b), 2671–2680.

On July 17, 2013, a Memorandum–Decision and Order was filed denying defendant's motion for summary judgment. Haust v. United States, 953 F. Supp. 2d 353 (N.D.N.Y. 2013). A two-day bench trial on liability only was conducted on September 30 and October 1, 2013, in Utica, New York. The following four witnesses testified at the bench trial: Haust; Warner; Cynthia Donnelly, Postmaster at the USPS office in Phoenix, New York; and Eugene R. Camerota, defendant's expert licensed professional engineer ("Camerota"). The parties also entered into a stipulation of facts. Ct. Ex. No. 1.

At the conclusion of the trial, the parties were afforded time to review the transcript of the proceeding and submit proposed findings of fact and conclusions of law. Those submissions have been received and reviewed with the transcript. The following are the Findings of Fact and Conclusions of Law required by Federal Rule of Civil Procedure 52(a).

## II. **FINDINGS OF FACT**

Warner works as a rural mail carrier out of the USPS office in Phoenix, New York. In this position, she delivers mail to rural customers in a 1989 GMC "long life vehicle" owned by the USPS.[1] Her regular route takes her east of Phoenix to deliver to the mailboxes along Route 264, a two-lane roadway with shoulders on either side. After delivering mail to Mailbox

---

[1] This is a small, boxy vehicle that is typically used by mail carriers. The driver's seat and steering wheel are on the right side of the vehicle to allow for easy access to mailboxes on that side of the vehicle. The vehicle is white with red and blue striping and USPS lettering.

No. 262 on Route 264, the eastern-most mailbox on her route, Warner normally performs a "turnaround" by driving past No. 262's driveway and mailbox, putting her USPS vehicle into reverse, sounding her horn, backing into No. 262's driveway, and then turning left into the westbound lane of Route 264. She then continues west on Route 264, heading back towards Phoenix, delivering mail along the way. Mailbox No. 255 is the first mailbox on her delivery route in the westbound lane on Route 264 after she completes the turnaround. On at least one occasion in the past, Warner proceeded further east on Route 264 and turned around in a gas station parking lot instead of performing her normal turnaround in the driveway of No. 262.

Warner drove this route on the morning of December 22, 2008, which was a cold, wintry day in central New York. Blizzard-like weather made for extremely poor driving conditions that morning. The roads were covered in snow, visibility was poor, and heavy winds caused periodic whiteouts. At approximately 10:30 a.m., Haust left his home in West Monroe, New York, to drive to Baldwinsville, New York, where he works as a commercial truck driver. Haust drove west on Route 264 towards Phoenix in his 2005 Chevrolet Silverado pick-up truck. He regularly drives this route to work.

At approximately 10:45 a.m., Haust approached the area of Route 264 where Warner's route ends and she normally turns around. Haust, driving west on Route 264 at approximately twenty to twenty-five miles-per-hour, first saw Warner's USPS vehicle only moments before colliding with it. This is where the parties' version of the accident diverge. Plaintiff maintains that Warner was making her turnaround and essentially pulled out in front of him into the westbound lane without looking, causing the unavoidable collision. Warner reports that she had already completed her turnaround and was completely stopped at

Mailbox No. 255 preparing to deliver mail when Haust struck her from behind.

The government's expert, Camerota, testified that, based on the final resting position of the vehicles and the configuration of the roadway, the USPS vehicle must have been stopped at Mailbox No. 255 when Haust's vehicle struck it from behind. He further testified that had the accident occurred as Haust alleges, the final rest positions and primary damage points of the vehicles would have been very different from what the evidence indicates. He presented computer-generated simulations depicting both scenarios.

Based on the trial testimony, photographs in evidence showing the damage to the USPS vehicle and the final resting position of both vehicles, and Camerota's report, it is determined that Warner had already performed her normal turnaround in the driveway of No. 262 and was slowly moving westbound on Route 264 towards Mailbox No. 255, with her right two tires on the shoulder and her left two tires in the westbound travel lane when Haust struck the right rear of her vehicle. Camerota's assertion that Warner's vehicle was completely out of the westbound lane of travel is discounted. Indeed, during her trial testimony Warner acknowledged that the left tires of the USPS vehicle were likely over the white fog line in the travel lane due to the accumulation of snow near Mailbox No. 255.

The impact from the collision spun the USPS vehicle ninety degrees so it faced north, perpendicular to Route 264, and blocked the westbound lane. Haust's truck left the roadway and came to rest in a snow-filled ditch in the front yard of No. 255, in front of the USPS vehicle. Plaintiff suffered injuries as a result of the accident.

## III. **CONCLUSIONS OF LAW**

The FTCA permits private citizens to recover damages for injuries allegedly caused by the negligence of government employees acting within the scope of their employment. See

28 U.S.C. § 1346(b)(1).  "The liability of the federal government under the FTCA is generally determined by state law."  Taylor v. United States, 121 F.3d 86, 89 (2d Cir. 1997) (internal quotation marks omitted).  The parties do not dispute that New York law applies.

New York Vehicle and Traffic Law ("VTL") section 1103(b) creates certain exceptions from the ordinary rules of the road for public vehicles "actually engaged in work on a highway," including statutorily defined "hazard vehicles."  Riley v. Cnty. of Broome, 95 N.Y.2d 455, 461 (2000).  "[T]he exemption turns on the nature of the work being performed . . . not on the nature of the vehicle performing the work."  Id. at 464.  Further, the VTL defines "hazard vehicles" as including "vehicles driven by rural letter carriers while in the performance of their official duties."  N.Y. VEH. & TRAF. LAW § 117-a.

In Riley, the New York Court of Appeals interpreted VTL section 1103(b) to require a showing of "reckless disregard" in order to establish liability on the part of a driver of a hazard vehicle engaged in covered work.  95 N.Y.2d at 466.  Specifically, the plaintiff must demonstrate that the driver "has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow and has done so with conscious indifference to the outcome."  Id. (internal quotation marks omitted).

Haust and Warner both acted negligently on the morning of December 22, 2008.  Haust operated his pick-up truck at an unreasonable speed given the extremely poor visibility and road conditions.  Warner failed to notice Haust approaching from the east and did not keep the USPS vehicle completely out of the westbound travel lane while approaching Mailbox No. 255.  Further, despite the weather conditions, she elected to perform her normal turnaround across Route 264 even though an alternate means of turning around was

- 5 -

available further east via a gas station parking lot. However, even if her conduct amounted to negligence, Warner did not act with reckless disregard of a known or obvious risk. See Burke–Thorpe v. State, 8 Misc. 3d 1024A, 2005 WL 1920738, at *2 (N.Y. Ct. Cl. 2005) ("The fact that [the snowplow driver] did not notice claimant's car on the roadway before he struck it (during whiteout conditions) and that he did not immediately stop to further investigate can, at best, be characterized as negligence which cannot possibly rise to the level of recklessness . . . .").

## IV. CONCLUSION

Both Haust and Warner acted negligently on the morning of December 22, 2008. However, plaintiff has failed to establish that Warner acted with reckless disregard within the meaning of VTL section 1103(b).

Accordingly, it is

ORDERED that

1. Plaintiff's claim pursuant to the Federal Tort Claims Act is DISMISSED; and

2. The complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly and close the file.

_____
United States District Judge

Dated: May 5, 2014
      Utica, New York